# IN THE COURT OF APPEALS OF IOWA

No. 15-1294
Filed August 17, 2016

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JOHN WINSTON LUSK,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, DeDra Schroeder, Judge.

Defendant appeals his convictions on two counts of second-degree sexual abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BOWER, Judge.**

John Lusk appeals his convictions on two counts of second-degree sexual abuse. We find there is substantial evidence in the record to support his convictions, and the district court did not abuse its discretion by admitting expert testimony of a general nature concerning victims of sexual abuse. We affirm Lusk's convictions.

## I.    Background Facts & Proceedings

On June 16, 2014, the State charged Lusk with two counts of sexual abuse in the second degree, in violation of Iowa Code section 709.3(2) (2013). One count involved A.L. and the other count involved C.L.—both of whom are related to Lusk.

Lusk filed a motion in limine seeking to prohibit the State "from eliciting testimony from an expert witness that vouches for or purports to vouch for the credibility of the witnesses." The State did not resist this request. In ruling on the motion in limine, the district court noted only the State did not resist on this ground.

At the criminal trial, held in May 2015, A.L. was thirteen years old. She testified she sometimes visited Lusk in Floyd and described his house. She testified on one visit, she and her sister were sleeping in the basement when Lusk came down and asked if she wanted him to rub her back. A.L. stated, "Well, he started rubbing my back. And then he went—he touched a place that I do not—I didn't feel like it was right." She stated Lusk put his hand under her underwear and shorts and touched her front private area. A.L. testified, "No, I did not feel it was okay at all. I did not feel it was good." A.L. told her mother about

the incident several years later. A.L.'s mother testified Lusk moved to the Floyd area from Sioux City around April 2012.

C.L. was nine years old at the time of the criminal trial. C.L. testified when Lusk lived in Sioux City, Lusk touched C.L.'s penis—which C.L. called his "peeper,"—several times, both over and under his clothing. C.L. also described an incident which occurred at the house of his uncle in Charles City. C.L. stated he was sitting next to Lusk on a couch in the living room when other people were around and Lusk touched his peeper over his clothing. He stated it made him feel, "[y]ucky inside," "[b]ecause it felt weird. I didn't like it even one bit." After the family returned from the visit in Charles City, C.L. told his mother about the incident.

The State presented the testimony of Tammera Bibbins, who was a forensic interviewer with the Regional Child Protection Center. She testified generally about delayed disclosure, how children of different ages react to sexual abuse, interfamilial victimization, and grooming. She also testified a child could be sexually abused when other people were in the room.

The district court denied Lusk's motion for judgment of acquittal. A jury found Lusk guilty of both counts of second-degree sexual abuse. The district court sentenced Lusk to a term of imprisonment not to exceed twenty-five years on each count, to be served consecutively. Lusk now appeals.

## II. Sufficiency of the Evidence

Lusk claims the State did not present sufficient evidence to support his convictions. He claims this case is similar to *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993), where we reversed a defendant's convictions because

we found the victims' allegations of sexual abuse were "inconsistent, self-contradictory, lacking in experiential detail, and, at times, border on the absurd." Lusk states the testimony of A.L. and C.L. raises questions about whether the alleged incidents happened and, if they occurred, when they happened.

We will uphold a jury's verdict if there is substantial evidence in the record to support it. *State v. Showens*, 845 N.W.2d 436, 440 (Iowa 2014). "In reviewing challenges to the sufficiency of the evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* at 439–40. Our review on claims challenging the sufficiency of the evidence is for the correction of errors at law. *Id.* at 439.

In general, it is for the jury to resolve conflicts in the evidence, pass upon the credibility of witnesses, and weigh the evidence. *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). "A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996). An exception arises only when "'[t]he testimony of a witness [is] so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.'" *State v. Lopez*, 633 N.W.2d 774, 785 (Iowa 2001) (quoting *Smith*, 508 N.W.2d at 103).

The testimony of A.L. and C.L. was not inconsistent, self-contradictory, lacking in experiential detail, or bordering on the absurd. A.L. and C.L. each consistently testified where the incidents occurred and gave detailed testimony about the sexual abuse. While C.L. testified the incident occurred while other

people were present in the room, his mother testified there was a confused atmosphere during the relevant time period because several people and two dogs were coming in and out of the room and several conversations were taking place at the same time. It is not implausible Lusk briefly touched C.L.'s "peeper" over his clothes and at other times under C.L's clothes. We determine the evidence in this case does not come within the exception found in *Smith*. *Smith*, 508 N.W.2d at 103. We conclude there is substantial evidence in the record to support Lusk's convictions.

### III.    Expert Testimony

Lusk claims the district court abused its discretion by permitting Bibbins to vouch for the credibility of A.L. and C.L. He states Bibbins purportedly testified only about the general dynamics of child sexual abuse, but many of the examples she gave were close to the facts in this case. He claims the district court should have granted his objections to her testimony.

During the criminal trial, Bibbins began testifying about delayed disclosure and defense counsel objected. Outside the presence of the jury, defense counsel renewed the motion in limine regarding expert testimony. The State argued, "[I]t is not vouching for her to simply give information that will aid the trier of fact because of her specialized knowledge." The district court stated the ruling on the motion in limine remained the same. Bibbins was permitted to continue testifying generally about delayed disclosure.

The prosecutor asked Bibbins if a child could be sexually abused when other people were around. Defense counsel objected on the ground of vouching, and the district court overruled the objection. Bibbins testified sexual abuse "can

happen in a room full of people." The prosecutor then asked if that had ever been disclosed to Bibbins in her own interviews. Defense counsel objected, and the court ordered the prosecutor to restate the question. The prosecutor then specified, "In your own experience in dealing with other kids—we're not talking about these kids here—have you talked to kids, and have the—have abusers also talked about doing this in front of other people?" and Bibbins responded, "Yes."

"We allow an expert witness to testify generally the victims of child abuse display certain demeanors." *State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014). "However, when an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence." *Id.* The reason for this rule is "a witness's credibility 'is not a 'fact' in issue' subject to expert opinion." *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) (citation omitted). It is the function of the jury, not an expert witness, to determine the credibility of witnesses. *Id.* at 677. We review the district court's ruling on this issue for an abuse of discretion. *See id.*

Bibbins did not testify the demeanors of A.L. and C.L. were consistent with sexual abuse. She testified generally about whether child victims of sexual abuse sometimes delay reporting the abuse and whether sexual abuse of a child could occur when other people were in the room. We determine the district court did not abuse its discretion in finding Bibbins did not cross the line and indirectly vouch for the credibility of A.L. and C.L.

On appeal, Lusk also claims Bibbins was improperly permitted to testify about children's understanding of time and sexual abuse by a family member. He did not object to this testimony. We conclude these issues have not been preserved for our review. *See State v. Jefferson*, 574 N.W.2d 268, 278 (Iowa 1997) (noting "issues must be presented to and passed upon by the district court before they can be raised and decided on appeal").

We affirm Lusk's convictions.

**AFFIRMED.**

Blane, S.J., concurs; Danilson, C.J., concurs specially.

**DANILSON, Chief Judge** (concurring specially)

I write specially as I believe these facts are more akin to *State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989 (Iowa Ct. App. Apr. 22, 2015), than the cases relied upon by the majority and should be distinguished from *Pitsenbarger*. In *Pitsenbarger*, the State attempted to sanitize its direct examination of its expert witness by not specifically referencing testimony, past statements, past actions, and past behaviors of the alleged victim. *Id.* at *8. Nevertheless, we concluded impermissible vouching resulted because the State went through a methodical process via statistics, reports, and the expert's opinions on each significant, purported, and disputed fact in the case by hypothetical questions. *Id.* Here, the State's expert walked the thin line between proper expert testimony and vouching for the credibility of the victims but did not cross it. The expert testified to issues concerning delayed reporting and if perpetrators commit sexual abuse when others are present in the same room. The jury still had to determine if the victims were telling the truth, unlike in *Pitsenbarger*, where the jury only had to insert the name of the alleged victim into the series of hypothetical questions to determine credibility. I agree Lusk's convictions should be affirmed.