# IN THE SUPREME COURT OF IOWA

No. 12–1633

Filed December 5, 2014

Amended February 23, 2015

**STATE OF IOWA,**

    Appellee,

vs.

**MATTHEW EUGENE BROWN,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cedar County, Mark D. Cleve, Judge.

The State seeks further review of a court of appeals decision reversing a defendant's conviction because the district court allowed expert testimony vouching for the victim's credibility. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, and Jeffrey L. Renander, County Attorney, for appellee.

**WIGGINS, Justice.**

This case involves a charge of sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) (2011). A jury convicted the defendant of this charge. On appeal, the defendant contends he is entitled to a new trial because a certain expert witness vouched for the credibility of the victim. We transferred the case to our court of appeals. The court of appeals held the defendant is entitled to a new trial on the ground an expert witness vouched for the credibility of the victim.

The State sought further review, which we granted. On further review, we agree with the court of appeals that the defendant is entitled to a new trial on the ground an expert witness vouched for the credibility of the victim. Therefore, we affirm the decision of the court of appeals and remand the case for a new trial.

## I. Background Facts and Proceedings.

In the summer of 2011, A.T., along with her brother, went to her older stepsister's home for a sleepover. Her stepsister was engaged to and living with defendant Matthew Brown, and the couple had a four-year-old daughter. Brown, his fiancé, and all three children spent the day fishing and playing. Upon returning to Brown's home that evening, the children got ready for bed and slept on the living room floor. Each child had a blanket and pillow for sleeping. Brown's daughter was unable to fall asleep, so he stayed in the living room with her to calm her down. A.T.'s stepsister remained in her bedroom, playing computer games on her tablet until she fell asleep. Brown fell asleep on the floor with the children.

A.T. claims while she was on the living room floor, Brown used his hand to rub her vagina, but he did not put his hand inside her vagina.

A.T. alleges this occurred while her brother and niece were also sleeping on the floor with her; however, they were not awake. A.T. stated she was wearing a t-shirt and underwear at the time and she could not remember if Brown touched her under or on top of her underwear. A.T. further stated Brown did not say anything to A.T., either during or after the incident. A.T. said after Brown touched her vagina she got up and had breakfast.

On the morning of August 26, A.T.'s mother was cleaning the child's genital area when A.T. said Brown had touched her vagina on two occasions while she was at Brown's home. A.T.'s other sister was also present for this disclosure. A.T.'s mother stated they were not talking about Brown at the time and the statement came out of nowhere. The mother also stated A.T. told her Brown had made her touch his penis; however, A.T. denied she touched or saw Brown's penis. A.T. further stated she could not remember Brown touching her any other time. A.T.'s mother immediately wrote down everything her daughter had told her about the incident. The same day, A.T.'s mother and father contacted the authorities to report the incident.

A few days later, a forensic interviewer at the Child Protection Response Center, Michelle Mattox, interviewed A.T. Initially, A.T. denied Brown touched her. After Mattox explained to A.T. her job and the interview process, A.T. told Mattox that Brown had touched her "potty spot."

On September 20, Dr. Barbara Harre examined A.T. at the Child Protection Response Center. Harre completed a medical assessment for A.T. including medical, family, and social history. She also took labs, performed a physical examination, and gathered information regarding the complaints of inappropriate contacts with A.T.'s body.

In the months before trial, Brown filed several motions in limine. Relevant here are Brown's second and fifth motions, seeking to exclude A.T.'s statements to Harre on hearsay grounds and as against his Confrontation Clause rights. The district court reserved ruling on any hearsay statements made by A.T. to Harre and denied the motion on the Confrontation Clause because the child was testifying at trial.

At trial, the county attorney asked Mattox whether she was "trained to tell when a child is telling the truth." Brown objected to the question and the district court sustained the objection on the grounds of improper vouching.

During trial, Brown made an oral motion asking the court to prohibit Harre from testifying A.T.'s "claims were credible or that she believed [A.T.] or that she in her expert opinion . . . thought [A.T.] had in fact been sexually abused." Brown did not reassert his hearsay objection, so we will not consider it in this appeal.[1] The district court granted most of Brown's motion. However, the court overruled the motion as to one of the paragraphs in Harre's report. The paragraph stated:

> [A.T.]'s history is detailed and clear. She has been consistent in what she has reported to her mother and to this examiner. She was clear about where the touching occurred and confidently demonstrated that. This examiner agrees this disclosure is significant and that an investigation is clearly warranted.

---

[1]The gist of the hearsay objection made by Brown in his first motion in limine was that Harre should not be allowed to testify as to what the child told her because the child was not making the statements to Harre for the purposes of medical diagnosis or treatment. *See* Iowa R. Evid. 5.803; *see also United States v. Bercier*, 506 F.3d 625, 632 (8th Cir. 2007) (finding statements made to medical provider by a sexual abuse victim were not for the purpose of medical diagnosis or treatment; therefore, the trial court abused its discretion in admitting such testimony).

During closing arguments, the county attorney again read this section of the report to the jury. The county attorney stressed A.T.'s "testimony is reinforced by the reports from Dr. Harre." He also noted, "Dr. Harre testified this morning. She is a board-certified physician in pediatrics. She specializes in child abuse sex cases. . . ." He stated other witnesses, such as Harre, reinforced the victim's testimony.

Additionally, during closing arguments the county attorney told the jury,

> If you can't look at it through the eyes of [A.T.], I would ask you to look at it through the eyes of when you were 7. Go back to when you were 7 years-old and something like this happened to you . . . .

At which point Brown objected, arguing the statement was a golden-rule violation. The district court sustained the objection.

The jury found Brown guilty of sexual abuse in the second degree. Prior to the sentencing, Brown filed a motion for new trial on the grounds the verdict was contrary to the evidence because the testimony at trial regarding the incident was inconsistent and for prosecutorial misconduct during closing arguments. The district court denied the motion. Brown appealed. We transferred this case to our court of appeals.

The court of appeals reversed and remanded the case for a new trial holding, "Credibility is reserved for the trier of fact and we conclude the court erred in admitting Dr. Harre's report, which invaded the province of the jury." The court of appeals did not address the other issues raised by Brown. The State then filed this application for further review, which we granted.

**II. Issue.**

In this appeal, the issue as to whether the district court erred in allowing the objected to paragraph in the expert's report to the jury is dispositive.

**III. Standard of Review.**

We review the admission of the objected to paragraph for an abuse of discretion. *State v. Dudley*, 856 N.W.2d 668, 680 (Iowa 2014). The district court abuses its discretion when it exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000).

**IV. Analysis.**

In an opinion filed on this date, we established the legal principles applicable to the situation when an expert witness's testimony crosses the line and directly or indirectly vouches for a witness's credibility thereby commenting on a defendant's guilt or innocence. *Dudley*, 856 N.W.2d at 676–77. There we said:

> Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility. Our system of justice vests the jury with the function of evaluating a witness's credibility. The reason for not allowing this testimony is that a witness's credibility is not a fact in issue subject to expert opinion. Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence. Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's

function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony.

We again reaffirm that we are committed to the legal principle that an expert witness cannot give testimony that directly or indirectly comments on the child's credibility. We recognize there is a very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible.

*Id.* (citations omitted) (internal quotation marks omitted).

Applying these principles to the objected to paragraph, we first need to parse the sentences in the paragraph. The first three sentences do nothing more than tell the jury A.T. was able to give Harre a clear and detailed history. The third sentence adds the fact that when giving the history A.T. did not hesitate to display where Brown allegedly touched her. These sentences also convey to the jury that A.T. gave the same history to her mom as she did to Harre. We see nothing wrong with the first three sentences. These statements give the jury insight into the witness's memory and knowledge of the facts. *Id.* at 678. These sentences factually describe A.T.'s conduct when talking to Harre.

However, the last sentence of the paragraph is troublesome. This sentence is indirectly conveying to the jury that A.T. is telling the truth about the alleged abuse because the authorities should conduct a further investigation into the matter. The purpose of the interview was to see if A.T.'s complaints were credible and required further action. Our reasoning is further supported by the county attorney's use of this paragraph in his final argument where he argued the paragraph vouches for the victim's credibility. Therefore, we find this sentence crossed the line and vouched for A.T.'s credibility.

The State claims Brown was not prejudiced by the admission of this testimony; thus, even if the district court abused its discretion in

admitting the statements, we should not reverse. We disagree. There is no physical evidence supporting the State's case. The State's entire case depends on the credibility of A.T. The expert witness's statement put a stamp of scientific certainty on A.T.'s testimony. A jury uses this type of expert testimony to bolster the victim's testimony and tip the scales against the defendant. For this reason, we cannot find the expert's statement did not prejudice Brown.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Mansfield, J., who concurs specially.

**MANSFIELD, Justice (concurring specially).**

I join almost all of the court's well-reasoned opinion. I write separately because I diverge from the majority on one point.

Like the court of appeals, I would find the *entire* paragraph in Dr. Harre's report objectionable. In my view, this paragraph is, "in effect, an expert opining that A.T. was to be believed." *State v. Brown*, No. 12–1633, 2013 WL 5743652, at *5 (Iowa Ct. App. Oct. 23, 2013). Thus, I would find that all of this paragraph crossed the fine line noted in *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986), and reiterated today in *State v. Dudley*, 856 N.W.2d 668, 671–85 (Iowa 2014).